UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:22-cv-00077

| | |
|---|---|
| **KEITH H. ROUGHT,** | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| **KILOLO KIJAKAZI, Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 9) and the Commissioner's Motion for Summary Judgment (Doc. No. 10). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

On November 23, 2018, Plaintiff filed claims for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), alleging disability since July 15, 2018. (Tr. 22). Plaintiff's claim was denied initially and upon reconsideration on May 9, 2019 and July 31, 2019, respectively. (Id.) On Plaintiff's request, the administrative law judge ("ALJ") held a telephonic hearing on March 26, 2020, at which Plaintiff, his attorney, and a vocational expert appeared. (Tr. 63–85). After an October 1, 2020 psychological consultative examination of Plaintiff, a supplemental hearing was held on January 19, 2021, during which the ALJ admitted the psychological report of Dr. Chad Ritterspach. (Tr. 42). Plaintiff, his attorney, a vocational expert, and a witness for Plaintiff (Rhonda Barkman, Plaintiff's

1

wife) attended the hearing. (Tr. 39). On January 29, 2021, ALJ determined that Plaintiff was not disabled from July 15, 2018 through the date of the ALJ's decision. (Tr. 32).

The Appeals Council denied Plaintiff's request for review on February 17, 2022, rendering the ALJ's decision Defendant's final administrative decision on Plaintiff's claim. (Tr. 1). Thereafter, Plaintiff timely filed this action.

## II. Standard of Review

This Court's review of the Commissioner's determination is limited to evaluating whether the findings are supported by substantial evidence and whether the correct law was applied. Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). A reviewing court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," this Court will defer to the Commissioner's decision. Id. (internal quotation marks omitted). Thus, the only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## III. Discussion

### A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the

2

same testimony and evidentiary materials, but whether the ALJ's decision is supported by substantial evidence. The undersigned finds that it is not.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     Whether the claimant is engaged in substantial gainful activity;

(2)     Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)     Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     Whether the claimant has the residual functional capacity to perform the requirements of his past relevant work; and

(5)     Whether the claimant is able to do any other work, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i–v).

In this case, the Commissioner determined Plaintiff's claim at the fourth step of the sequential evaluation process, reasoning that Plaintiff is capable of performing past relevant work as a security guard, assembler, and injection machine molding operator and that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. 31–32).

## C. The Administrative Decision

In rendering his decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 24).

At the second step, the ALJ found that Plaintiff suffered from the following severe impairments prior to the disability date of July 15, 2018: spine disorder and dysfunction of major joints. (Id.) The ALJ noted that Plaintiff's history of a torn meniscus to his left knee and a mental impairment of a neurocognitive disorder were nonsevere physical impairments. (Tr. 24–26).

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 27).

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can occasionally climb ladders, ropes, or scaffolds and can frequently climb ramps or stairs. (Id.) The ALJ further determined that Plaintiff is limited to frequent bilateral handling and fingering. (Id.)

Finally, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of performing past relevant work as a security guard, assembler, and injection machine molding operator. (Tr. 31–32). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through the date of the ALJ's decision on January 29, 2021. (Tr. 32).

## D. Discussion

Plaintiff has made one assignment of error: that the ALJ erred by ignoring probative evidence and misstating record facts in order to find the medical opinion of psychological consultative examiner Dr. Ritterspach unpersuasive and conclude that Plaintiff's cognitive impairment is not severe and results in no meaningful impact on his capacity for work.

4

Specifically, Plaintiff argues that the ALJ's decision was based on the legally erroneous misconceptions that (1) Plaintiff's mental status examinations showed no specific memory deficits; (2) computerized tomography ("CT") imaging of Plaintiff's brain was normal; (3) Plaintiff has not sought treatment for his alleged memory deficits; and (4) Plaintiff did not demonstrate any problems communication or remembering during his administrative hearings.

As noted above, the Court may review the administrative record to determine whether the Commissioner applied the correct legal standards and supported her findings with substantial evidence. See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020) (citation omitted). "To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." Id. at 95 (quotations and citation omitted); see also 20 C.F.R. § 404.1545(a)(3) (to determine an individual's residual functional capacity, an adjudicator must base his assessment on "all of the relevant medical and other evidence"). If the ALJ fails to build that logical bridge—for example, by "selectively citing evidence from the record" or "misstating and mischaracterizing material facts," the Court cannot uphold the ALJ's disability determination. See Arakas, 983 F.3d at 98–99.

The Court finds that the ALJ did not properly consider probative evidence and misstated facts from the record in determining that Dr. Ritterspach's medical opinion was not persuasive, and that Plaintiff's cognitive impairment was nonsevere, resulting in no meaningful impact on his capacity for work. First, the ALJ determined that Plaintiff's mental status examinations revealed no memory deficits, citing to portions of the opinions of two non-specialist consultative examiners who were retained by the Social Security Administration to assess Plaintiff's arthritis. (Tr. 398, 408). However, Plaintiff did exhibit mental deficits during his mental status examination with Dr. Ritterspach—specifically, when given three words to repeat back to Dr. Ritterspach, Plaintiff was

only able to recall one word on his own, could recall the second word when given a hint, and could not recall the third word at all. (Tr. 563). The ALJ did mention Plaintiff's inability to recall all three words in his decision, (Tr. 30), but did not mention this failure in determining that Plaintiff had shown no specific deficits in recent or remote memory, (Tr. 26). As such, the ALJ improperly selectively cited to evidence from the record while ignoring other relevant evidence. See Arakas, 983 F.3d at 98.

Second, in determining that Plaintiff's mental impairment was nonsevere, the ALJ cited to two CT images of Plaintiff's brain that did not show any abnormalities. (Tr. 26). But the ALJ failed to explain how a normal CT scan logically leads to the conclusion that Plaintiff's impairment is nonsevere, and the Court agrees with Plaintiff that any attempt to explain this conclusion would fail as CT scans serve the purpose of *ruling out* conditions other than a mental impairment, such as tumors, strokes, trauma, or fluid buildup. The ALJ further failed to note that Plaintiff's initial CT scan was a preliminary step in an urgent care mental evaluation and that he was assessed with "memory change" after his scan results came back as normal. (Tr. 390–91). "An ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings. . . . ALJs may not draw their own conclusions from medical imaging, as they lack the expertise to interpret it." Id. at 108–109 (citations omitted). That is, however, what the ALJ improperly did here.

Third, the ALJ stated that Plaintiff did not seek treatment for his alleged memory impairment. (Tr. 26, 30). But evidence in the record shows that in 2020, Plaintiff did seek treatment for memory issues. Specifically, Plaintiff went to urgent care due to gradually worsening memory loss and reported specific instances of deteriorated memory, including difficulty remembering streets and chronic sleep issues. (Tr. 389). During his urgent care evaluation, he was assessed with

6

memory changes and was advised to mind his personal safety, particularly while driving. (Tr. 390). Moreover, in 2020, Plaintiff was evaluated by Dr. Karen Davis after reporting issues with impaired cognition, and Dr. Davis discussed with Plaintiff the possibility of receiving help from his children and was advised against living alone and to consider moving into an assisted living facility or nearer to one of his children. (Tr. 447). Further, the ALJ did not consider whether Plaintiff was able to afford treatment or had access to free medical services as required by SSR 16-3p, nor did he determine whether Plaintiff had good cause for failing to follow medical treatment as required by SSR 18-3p. Throughout the record is evidence of Plaintiff's inability to afford medical care as he lost his medical insurance. See, e.g., (Tr. 77–78). The Court determines that the ALJ both misstated that Plaintiff had not sought treatment for his mental impairment and improperly failed to consider Plaintiff's inability to afford extensive medical treatment.

Finally, in determining that Plaintiff's cognitive impairment is nonsevere, the ALJ noted that Plaintiff did not demonstrate problems communicating or remembering facts during his March 2020 or January 2021 hearings. (Tr. 26). As Plaintiff notes, however, Plaintiff has not cited to an inability to communicate associated with his alleged impairment. Further, while an ALJ can make observations during a hearing to make a credibility determination, he cannot reject or ignore evidence from the record based on his own conclusions. See Jenkins v. Bowen, 819 F.2d 1138 (Table) (4th Cir. May 18, 1987) (citations omitted) ("The ALJ also erred by engaging in so-called sit and squirm jurisprudence when he discounted Jenkins' testimony about pain based on his observation that Jenkins did not seem to be in pain or discomfort at the hearing. This kind of determination is inappropriate for an ALJ, and is generally condemned. The ALJ is not a physician qualified to make such determinations."). As such, the ALJ's reliance on his own perception of

Plaintiff's presentation during the hearings over the opinions of a medical professional in determining that Plaintiff's cognitive impairment is nonsevere was improper.

In sum, the ALJ did not appropriately consider all available evidence in determining that Plaintiff's cognitive impairment was nonsevere and that Plaintiff has the residual functional capacity to perform the requirements of his past relevant work. In other words, the ALJ failed to provide the "logical bridge" that explains the reasoning behind his conclusions. As such, the Court finds that the Commissioner's decision is not supported by substantial evidence, and it must be remanded.

**V.      Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of the proceedings, the motions, the briefs, and Plaintiff's assignments of error. Because the ALJ did not appropriately consider all probative evidence in finding Plaintiff's cognitive impairment to be nonsevere, the case must be remanded.  Accordingly, Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be vacated.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1)  the decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED**;

(2)  Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

(3)  the Commissioner's Motion for Summary Judgment (Doc. No. 10) is **DENIED**; and

(4)  the matter is hereby **REMANDED** for further consideration.

Signed: June 5, 2023

Graham C. Mullen
United States District Judge